IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

JANET MARIE PHILHOWER     : Civil No. 1:25-CV-877
                                   :
    Plaintiff,                  :
                                     :
       v.                     :
                                     : (Chief Magistrate Judge Bloom)
FRANK BISIGNANO,              :
Commissioner of Social Security,[1]     :
                                     :
    Defendant.              :

## MEMORANDUM OPINION

## I.    Introduction

Janet Marie Philhower filed an application under Titles II and XVI of the Social Security Act for disability and disability insurance benefits and supplemental security income on June 25, 2019.[2] Following a hearing before an Administrative Law Judge ("ALJ"), the ALJ found that Philhower was not disabled from her alleged onset date of June 25, 2019, through December 28, 2023, the date of the ALJ's decision.[3]

---

[1] Frank Bisignano became the Commissioner of Social Security on May 7, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure and 42 U.S.C. § 405(g), Bisignano is substituted as the defendant in this suit.

[2] Tr. 1614-15.

[3] *Id.*

Philhower now appeals this decision, arguing that the ALJ's decision is not supported by substantial evidence.  After a review of the record, and mindful of the fact that substantial evidence "means only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion,'"[4] we conclude that substantial evidence supports the ALJ's findings in this case.  Therefore, we will affirm the decision of the Commissioner denying this claim.

## II.    Statement of Facts and of the Case

Philhower filed for disability and disability insurance benefits, as well as supplemental security income, alleging disability due to chronic obstructive pulmonary disease ("COPD"), degenerative joint disease, anxiety, depression, cervical adipectomy, diabetes type 2, neuropathy in both hands and feet, scoliosis lumbar, osteoarthritis of the neck, chronic pain syndrome, adrenal mass, and headaches/migraines.[5]  Philhower initially alleged disability as of December 31, 2005, and later amended that date to June 25, 2019.[6]  She was 46 years old at the time of her

---

[4] *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019).
[5] Tr. 67-68.
[6] Tr. 1614-15.

amended alleged onset of disability and had at least a high school education.[78]

Philhower and a Vocational Expert ("VE") both appeared and testified at a September 17, 2020, hearing on her disability application.[9] Philhower testified about, *inter alia*, her activities of daily living, her issues with her legs, her struggles with memory, and her body pains and neuropathy.[10]    The VE answered hypothetical questions about the prospective employment options for someone with limitations similar to Philhower's alleged limitations.[11]  Following this hearing, on September 21, 2020, the ALJ issued a decision denying Philhower's application for disability benefits.[12]

---

[7] Tr. 1636.
[8] Philhower did not outline the pertinent medical/vocational evidence of record in her brief as required by local rules.  (*See* LR 83.40.4(a)).  We will therefore forego recitation of the administrative record, except to say that the record contains medical records and medical opinion evidence, which the ALJ found supported the existence of five severe impairments and several other medically determinable but non-severe impairments.
[9] Tr. 37-66.
[10] Tr. 43-46, 46, 47, 51-53.
[11] Tr. 59-65.
[12] Tr. 11-25.

Philhower appealed, and the district court remanded the matter for further consideration of her medically determinable but non-severe impairments.[13]  Those impairments either needed to be accounted for in the RFC, or else the ALJ needed to articulate why these impairments required no additional limitations but had done neither here.[14]

As a result, a new ALJ held another hearing on Philhower's disability application on August 18, 2023.[15]  A Medical Expert ("ME") and a VE both appeared and testified at this hearing.[16]  Under questioning from the ALJ, the ME discussed the effects of an ATV accident Philhower suffered in 2022.  He discussed how that event caused Philhower injuries to her spine, collarbone, and shoulder, opined that the injury to her shoulder was severe and would impair her functionality, and explained that Philhower did not qualify as disabled under the Commissioner's listings.[17]  The ME also discussed potential postural and exertional

---

[13] Tr. 1596.
[14] *Id.*
[15] Tr. 1472-1529.
[16] *Id.*
[17] Tr. 1481-87.

limitations for Philhower.[18]   Philhower's attorney questioned the ME about foraminal narrowing in Philhower's spine, paresthesia resulting from the accident, and how those symptoms might impose additional limitations in the workplace.[19]

Philhower testified about her failed attempts to sustain gainful activity in the years since her initial application and how her physical limitations regarding standing and sitting made holding a job impossible.[20]   She also testified about limitations in activities of daily living, her ongoing migraine headaches, and her vertigo symptoms.[21]   The VE then answered hypothetical questions from the ALJ and Philhower's counsel about what kind of work would be possible for a person with limitations like those Philhower alleged.[22]   The ALJ held another hearing on December 18, 2023 where the VE returned to testify about the effects of certain changes to the hypotheticals discussed at the prior hearing.[23]

---

[18] Tr. 1489-94.
[19] Tr. 1495-1507.
[20] Tr. 1509-10.
[21] Tr. 1511-15.
[22] Tr. 1518-27.
[23] Tr. 1535-39

Following these hearings, on December 28, 2023, the ALJ issued a decision denying Philhower's application for disability benefits.[24] The ALJ first concluded that Philhower had not engaged in substantial gainful activity since her alleged onset date of June 25, 2019.[25] At Step 2 of the sequential analysis that governs disability claims, the ALJ found that Philhower suffered from the severe impairments of degenerative disc disease and osteoarthritis of the cervical spine, neuropathy of the hands and feet, scoliosis of the lumbar spine and thoracic spine, myofascial pain syndrome, and chronic pain syndrome.[26] At Step 3, the ALJ concluded that none of these impairments met or equaled the severity of a listed impairment under the Commissioner's regulations.[27]

Between Steps 3 and 4, the ALJ then concluded that Philhower:

[Had] the residual functional capacity to perform light work as defined in 20 CFR 416.967(b) except: she would be able to occasionally climb stairs and ramps and occasionally balance, stoop, kneel, crouch and crawl. She could never climb ladder[s], ropes, and scaffolds. She would be able to frequently reach, handle, finger, and feel bilaterally She could frequently operate foot controls. She would need to avoid concentrated

---

[24] Tr. 1611-37.
[25] Tr. 1617.
[26] Tr. 1618.
[27] Tr. 1621.

exposure to fumes, odors, dusts, gases, chemicals, and poorly ventilated areas. She would need to avoid exposure to unprotected heights and unprotected moving mechanical parts. She could tolerate no more than moderate levels of noise as defined in Appendix D of the Selected Characteristics of Occupations (SCO). She would need to avoid work outdoors in bright sunshine and work with bright or flickering lights such as would be experienced in welding or cutting metals. She retains the ability to perform simple, routine tasks and make simple, work-related decisions but can only tolerate occasional changes in the work setting.[28]

In reaching this RFC determination, the ALJ considered the objective medical record, the medical opinion evidence, and Philhower's reported symptoms.[29]  With respect to the medical opinion evidence, the ALJ first considered the opinion of Dr. Kneifati.[30]  Dr. Kneifati found that Philhower:

> [C]ould lift and carry only up to ten pounds and only occasionally; sit two hours at one time and four hours total per workday; stand one hour at one time and three hours total per workday; walk thirty minutes at one time and two hours total per workday with the need to use a wheelchair to ambulate; occasionally feel with her non-dominant left hand, frequently feel with her dominant right hand; frequently reach overhead, reach in all other directions, handle, finger, push, and pull with the bilateral upper extremities; frequently operate foot controls with the bilateral lower

---

[28] Tr. 1625.
[29] Id.
[30] Tr. 1630-31.

extremities; never climb ladders or scaffolds; occasionally climb ramps and stairs, balance, stoop, or kneel; frequently crouch or crawl; and tolerate continuous exposure to vibration, occasional exposure to humidity, wetness, and extreme heat, and no exposure to unprotected heights, moving mechanical parts, operating a motor vehicle, dust, odors, fumes, pulmonary irritants, and extreme cold.[31]

The ALJ found this opinion somewhat supported by Dr. Kneifati's own clinical examination findings and observations, including decreased range of motion of the cervical and lumbar spine and hyperesthesia of the hand and legs.[32]  However, the ALJ concluded that Dr. Kneifati's opinion was not consistent with other findings and observations from that examination, such as 5/5 strength in the extremities and a negative straight leg raising test.[33]  Thus, the ALJ was only persuaded by the portion of this opinion finding Philhower required postural and manipulative limitations in her RFC.[34]

Next, the ALJ considered the opinions of state agency consultants Dr. Draper and Dr. Balogh, given in 2019 and 2020, respectively.[35]  Both

---

[31] Tr. 1434-45, 1630.
[32] Tr. 1630.
[33] *Id.*
[34] Tr. 75, 100, 1631.
[35] Tr. 1631.

doctors found that Philhower had the capacity to perform light exertional work, except that she could never climb ladders, ropes, or scaffolds, could only occasionally climb ramps or stairs, balance, stoop, kneel, crouch, or crawl, needed to avoid concentrated exposure to fumes, odors, dusts, gases and poor ventilation, and had to avoid all exposure to hazards (*i.e.*, safety-sensitive machinery and unprotected heights.)[36]  The ALJ found these opinions generally persuasive, as they were consistent with and supported by the medical record on a longitudinal basis.[37]  Nonetheless, the ALJ, attempting to accommodate Philhower's symptoms from severe impairments, provided a "somewhat more restrictive [RFC] than is indicated by" those opinions.[38]

The ALJ next considered a December 2019 report from a state agency psychological consultant, Dr. Garito.[39]  Dr. Garito found that Philhower had mild limitations pertaining to the four broad areas of mental functioning.[40]  The ALJ concluded this opinion was supported by

---

[36] Tr. 75-87, 100-113, 1631.
[37] Tr. 1631.
[38] *Id.*
[39] Tr. 1631.
[40] Tr. 81.

Dr. Garito's notes that Philhower reported some anxiety and depression, and consistent with Philhower's medical records.[41]  However, the ALJ found that Dr. Garito's concentration, persistence, and pace limitations were not consistent with "a documented abnormal clinical examination finding pertaining to attention and concentration."[42]

The ALJ also considered the opinion of Dr. Ledermann, who opined that Philhower had:

> [N]o limitation pertaining to understanding, remembering, and carrying out simple instructions; none to mild limitation pertaining to the ability to make judgments on simple work related decisions; mild limitation pertaining to understanding, remembering, and carrying out complex instructions; mild to moderate limitation regarding the ability to make judgments on complex work related decisions; no limitation pertaining to interacting appropriately with the public, co-workers, and supervisors; and no limitation pertaining to responding appropriately to usual work situations and to changes in a routine work setting.[43]

The ALJ found this opinion generally persuasive, noting that it was supported by Dr. Ledermann's own evaluation of Philhower and consistent with the medical records on a longitudinal basis.  However,

---

[41] Tr. 1631.

[42] *Id.*

[43] Tr. 1632, 1179-85.

the ALJ provided a somewhat more restrictive RFC than this opinion suggested to account for Philhower's symptoms related to her mental health impairments.[44]

The ALJ also considered the opinion of state agency psychological consultant, Dr. Gavazzi.[45]  Dr. Gavazzi opined that Philhower had no limitations pertaining to understanding, remembering, or applying information and mild limitations in the other three areas of mental functioning.[46]  The ALJ found this opinion to be generally supported by Philhower's mild levels of depression and limited anxiety, and consistent with the medical records on a longitudinal basis.[47]  However, she was unpersuaded by the opinion relating to concentration, persistence, and pace, finding that it was not consistent with documented abnormal findings in that area.[48]

---

[44] Tr. 1632.
[45] Tr. 1632.
[46] Tr. 111.
[47] Tr. 1632.
[48] *Id.*

The ALJ considered three different medical records as distinct opinions given by Dr. Fink.[49]  Dr. Fink opined in December 2022 and February 2023 that Philhower could not engage in heavy lifting or overhead activity,[50] and in January 2023 restricted Philhower to being primarily in a sitting position and not lifting more than five pounds.[51] The ALJ found the December and February opinions somewhat supported by Dr. Fink's examination, but not consistent with Dr. Fink's finding of a neurovascularly intact right upper extremity.[52]  The ALJ also noted the limitations from those opinions were too vague.[53]  The ALJ found the second opinion unpersuasive as it was not supported by Dr. Fink's own examination notes which showed little to no symptoms.[54] Further, the ALJ concluded all three opinions were inconsistent with Dr. Fink's own records indicating Philhower returned to full duty work in May of 2023.[55]  In sum, the ALJ found these opinions unpersuasive.

---

[49] Tr. 1632-33.
[50] Tr. 2696, 2709.
[51] Tr. 2701.
[52] Tr. 1632, 2709.
[53] Tr. 1632-33, 2709.
[54] Tr. 1633, 2702.
[55] *Id.*

12

The ALJ then considered the medical opinion of Dr. Lewin, the ME who testified at the second hearing in this matter. First, the ALJ considered Dr. Lewin's written opinion, which opined that Philhower:

> [H]as the following limitations; frequently lift and carry up to ten pounds; occasionally lift and carry eleven to twenty pounds; never lift or carry twenty-one to fifty pounds or fifty-one to one hundred pounds; sit for two hours at one time without interruption and sit for a total of six hours during an eight hour work day; stand for one hour at one time without interruption and stand for a total of two hours during an eight hour workday; walk for one hour at one time without interruption and walk for a total of two hours during an eight hour work day; occasionally reach overhead and in all other directions with the right upper extremity; occasionally reach overhead with the left upper extremity; frequently reach in all other directions with the left upper extremity; occasionally push/pull with the right upper extremity; frequently push/pull with the left upper extremity; occasionally operate foot controls bilaterally; never climb ladders or scaffolds; occasionally climb ramps and stairs; occasionally balance, stoop, kneel, and crouch; never crawl; never tolerate exposure to unprotected heights, humidity, wetness, dust, odors, fumes, and pulmonary irritants; tolerate occasional exposure to moving mechanical parts and extreme cold; and cannot walk at a block at a reasonable pace on rough or uneven surfaces.[56]

The ALJ also considered Dr. Lewin's hearing testimony, which added a limitation of limited tolerance for vibration.[57] The ALJ

---

[56] Tr. 1633, 2821-26.
[57] Tr. 1634.

13

found these opinions somewhat supported by Dr. Lewin's references to Philhower's right clavicle fracture and lower back pain, but inconsistent with much of the evidence of record, and also with the notation in the medical records that Philhower returned to full duty work in May of 2023.[58] The ALJ found Dr. Lewin's opinions persuasive only to the extent that they indicated Philhower could perform work at the light exertional level.[59]

Finally, the ALJ found that the other state agency medical and psychological consultant opinions in this matter found the record was insufficient to fully evaluate Philhower's claims.[60] The ALJ noted that four of the statements, made in 2019 or 2020, had "no probative value for this decision given that the claimant has amended the alleged onset date to the date of the claimant's initially filed application for supplemental security income benefits which post-dates the claimant's date last insured."[61] As for the two opinions from 2023 and 2024, the ALJ

---

[58] Tr. 1633-34.
[59] Tr. 1634.
[60] Tr. 1634-35.
[61] *Id.*

14

concluded they were not consistent with the medical records.[62]  Thus, those opinions were found to have no probative value.[63]

With respect to Philhower's symptoms, the ALJ found that Philhower's statements concerning the intensity, persistence, and limiting effects of her impairments were not entirely consistent with the medical evidence and other evidence in the record.[64]  The ALJ recounted the objective evidence during the alleged disability period, including clinical examinations where Philhower showed no distress, activities Philhower engaged in that belied disability, and objective medical findings including 5/5 strength, no difficulty rising from a chair, no difficulty moving against gravity, and that treatments had been effective in addressing Philhower's mental health impairments.[65]  Ultimately, the ALJ found that Philhower was not as limited as she alleged.[66]

Having made these findings, the ALJ found at Step 4 that Philhower had no relevant past work and found at Step 5 that she could

---

[62] Tr 1635.
[63] Tr. 1634-35.
[64] Tr. 1626.
[65] Tr. 1626-30.
[66] *Id.*

perform the occupations of routing clerk, office helper, and marker.[67] Accordingly, the ALJ found that Philhower had not met the stringent standard prescribed for disability benefits and denied her claim.[68]

This appeal followed. On appeal, Philhower argues that the ALJ failed to consider some of her limitations from both severe and non-severe impairments in crafting the RFC, and failed to assign proper weight to the opinions of Dr. Fink.[69] This case is fully briefed and is therefore ripe for resolution.[70] For the reasons set forth below, we will affirm the decision of the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

This Court's review of the Commissioner's decision to deny benefits is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[71] Substantial

---

[67] Tr. 1637.

[68] *Id.*

[69] Doc. 10 at 1-2.

[70] Docs. 10, 12.

[71] *See* 42 U.S.C. §405(g); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[72]   Substantial evidence means less than a preponderance of the evidence but more than a mere scintilla.[73]

A single piece of evidence is not substantial evidence if the ALJ "ignores, or fails to resolve, a conflict created by countervailing evidence."[74]   However, where there has been an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[75]   The court must "scrutinize the record as a whole" to determine if the decision is supported by substantial evidence.[76]

---

[72] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[73] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[74] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993) (quoting *Kent v. Schweiker*, 710 F.2d 110, 114 (3d Cir. 1983)) (internal quotations omitted).

[75] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[76] *Leslie v. Barnhart*, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has explained the limited scope of our review, noting that "[substantial evidence] means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[77]   Under this standard, we must look to the existing administrative record to determine if there is "'sufficient evidence' to support the agency's factual determinations."[78]   Thus, the question before us is not whether the claimant is disabled, but rather whether the Commissioner's finding that he or she is not disabled is supported by substantial evidence and was based upon a correct application of the law.[79]

---

[77] *Biestek*, 139 S. Ct. at 1154 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

[78] *Id.*

[79] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts"); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

When conducting this review, we must remain mindful that "we must not substitute our own judgment for that of the fact finder."[80]  Thus, we cannot re-weigh the evidence. Instead, we must determine whether there is substantial evidence to support the ALJ's findings.  In doing so, we must also determine whether the ALJ's decision meets the burden of articulation necessary to enable judicial review; that is, the ALJ must articulate the reasons for her decision.[81]  This does not require the ALJ to use "magic" words, but rather the ALJ must discuss the evidence and explain the reasoning behind her decision with more than just conclusory statements.[82]  Ultimately, the ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests."[83]

## B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ

To receive disability benefits under the Social Security Act, a claimant must show that he or she is unable to "engage in any substantial

---

[80] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) (citing *Rutherford v. Barnhart*, 399 F.3d 546, 552 (3d Cir. 2005)).

[81] *Burnett v. Comm'r of Soc. Sec. Admin.*, 220 F.3d 112, 119 (3d Cir. 2000).

[82] *See Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009) (citations omitted).

[83] *Cotter v. Harris*, 642 F.2d 700, 704 (3d Cir. 1981).

gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death, or which has lasted or can be expected to last for a continuous period of not less than 12 months."[84]  This requires a claimant to show a severe physical or mental impairment that precludes him or her from engaging in previous work or "any other substantial gainful work which exists in the national economy."[85]  To receive benefits under Title II of the Social Security Act, a claimant must show that he or she is under retirement age, contributed to the insurance program, and became disabled prior to the date on which he or she was last insured.[86]

In making this determination, the ALJ follows a five-step evaluation.[87]  The ALJ must sequentially determine whether the claimant: (1) is engaged in substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals a listed

---

[84] 42 U.S.C. §423(d)(1)(A); 42 U.S.C. §1382c(a)(3)(A); *see also* 20 C.F.R. §§404.1505(a), 416.905(a).
[85] 42 U.S.C. §423(d)(2)(A); 42 U.S.C. §1382c(a)(3)(B); 20 C.F.R. §§404.1505(a), 416.905(a).
[86] 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).
[87] 20 C.F.R. §§404.1520(a), 416.920(a).

impairment; (4) is able to do her past relevant work; and (5) is able to do any other work, considering her age, education, work experience and residual functional capacity ("RFC").[88]

Between Steps 3 and 4, the ALJ must also determine the claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by her impairment(s)."[89] In making this assessment, the ALJ must consider all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of analysis.[90] Our review of the ALJ's determination of the plaintiff's RFC is deferential, and that determination will not be set aside if it is supported by substantial evidence.[91]

The claimant bears the burden at Steps 1 through 4 to show a medically determinable impairment that prevents him or her from

---

[88] 20 C.F.R. §§404.1520(a)(4), 416.920(a)(4).

[89] *Burnett*, 220 F.3d at 121 (citations omitted); *see also* 20 C.F.R. § 404.1545(a)(1).

[90] 20 C.F.R. §§404.1545(a)(2), 416.945(a)(2).

[91] *Burns v. Barnhart,* 312 F.3d 113, 129 (3d Cir. 2002).

engaging in any past relevant work.[92]  If met, the burden then shifts to the Commissioner to show at Step 5 that there are jobs in significant numbers in the national economy that the claimant can perform consistent with the claimant's RFC, age, education, and work experience.[93]

With respect to the RFC determination, courts have followed different paths when considering the impact of medical opinion evidence on this determination.  While some courts emphasize the necessity of medical opinion evidence to craft a claimant's RFC, other courts have taken the approach that "[t]here is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC."[94]  Additionally, in cases that involve no credible medical opinion evidence, courts have held that "the proposition that an

---

[92] *Mason*, 994 F.2d at 1064.

[93] 20 C.F.R. §§404.1512(f), 416.912(f); *Mason*, 994 F.2d at 1064.

[94] *Titterington v. Barnhart*, 174 F. App'x 6, 11 (3d Cir. 2006); *see also Biller v. Acting Comm'r of Soc. Sec.,* 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013).

ALJ must always base [her] RFC on a medical opinion from a physician is misguided."[95]

Given these differing approaches, we must evaluate the factual context underlying an ALJ's decision. Cases that emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where well-supported medical sources have found limitations to support a disability claim, but an ALJ has rejected the medical opinion based upon an assessment of other evidence.[96] These cases simply restate the notion that medical opinions are entitled to careful consideration when making a disability determination. On the other hand, when no medical opinion supports a disability finding or when an ALJ relies upon other evidence to fashion an RFC, courts have routinely sustained the ALJ's exercise of independent judgment based upon all the facts and evidence.[97] Ultimately, it is our task to determine,

---

[95] *Cummings v. Colvin*, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

[96] *Biller*, 962 F. Supp. 2d at 778–79.

[97] *See Titterington*, 174 F. App'x 6; *Cummings,* 129 F. Supp. 3d at 214–15.

23

considering the entire record, whether the RFC determination is supported by substantial evidence.[98]

## C. Legal Benchmarks for the ALJ's Assessment of Medical Opinions

For applications filed after March of 2017, the regulations require ALJs to consider several factors to determine the persuasiveness of a medical opinion: supportability, consistency, relationship with the claimant, specialization, and other factors tending to support or contradict a medical opinion.[99]  Supportability and consistency are the two most important factors, and an ALJ must explain how these factors were considered in her written decision.[100]  Supportability means "[t]he more relevant the objective medical evidence and supporting explanations . . . are to support his or her medical opinion(s) . . . . the more persuasive the medical opinions . . . will be."[101]  The consistency

---

[98] *Burns,* 312 F.3d 113.

[99] 20 C.F.R. § 404.1520c(c).

[100] 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2); *Blackman v. Kijakazi,* 615 F. Supp. 3d 308, 316 (E.D. Pa. 2022).

[101] 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).

factor focuses on how consistent the opinion is "with the evidence from other medical sources and nonmedical sources."[102]

While there is an undeniable medical aspect to the evaluation of medical opinions, it is well settled that "[t]he ALJ – not treating or examining physicians or State agency consultants – must make the ultimate disability and RFC determinations."[103]  When confronted with several medical opinions, the ALJ can choose to credit certain opinions over others but "cannot reject evidence for no reason or for the wrong reason."[104]  Further, the ALJ can credit parts of an opinion without giving credit to the whole opinion and may formulate a claimant's RFC based on different parts of different medical opinions, so long as the rationale behind the decision is adequately articulated.[105]  On the other hand, in cases where no medical opinion credibly supports the claimant's allegations, "the proposition that an ALJ must always base [her] RFC on a medical opinion from a physician is misguided."[106]

---

[102] 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).
[103] *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011).
[104] *Mason*, 994 F.2d at 1066.
[105] *See Durden v. Colvin*, 191 F. Supp. 3d 429, 455 (M.D. Pa. 2016).
[106] *Cummings*, 129 F. Supp. 3d at 214–15.

## D. The ALJ's Decision is Supported by Substantial Evidence.

Our review of the ALJ's decision denying an application for benefits is significantly deferential. Our task is simply to determine whether the ALJ's decision is supported by substantial evidence in the record; that is "only— 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"[107] Judged against this deferential standard of review, we conclude that substantial evidence supported the ALJ's decision in this case.

Philhower's first argument is a wide-ranging critique of the ALJ's decision, alleging myriad issues in combination evince that the ALJ failed to consider certain evidence. We conclude the ALJ sufficiently considered all the evidence here.

Philhower argues that the ALJ did not explain why she found Philhower's statements about her symptoms were not credible, failed to consider a possible need for an assistive device with walking, and "barely mentioned" her upper right extremity issues. We disagree. The ALJ spent several paragraphs explaining why Philhower's symptom

---

[107] *Biestek*, 139 S. Ct. at 1154.

26

statements were not credible,[108] articulated why an assistive device was unnecessary,[109] and devoted three paragraphs to the upper extremity issue.[110] We find no error with the ALJ's treatment of this evidence.

Philhower also claims the ALJ did not consider the recommendation that she elevate her legs throughout the day. But we can trace the logic that led the ALJ to omit this limitation. Philhower cites her own testimony and the medical opinion of Dr. Kneifati as supporting this limitation.[111] The ALJ referenced Philhower's testimony on this issue before concluding her symptoms were not as disabling as she claimed on the basis of, *inter alia*, evidence of normal coordination and range of motion, normal gait, and 5/5 muscle strength.[112] Similarly, the ALJ found Dr. Kneifati's opinion was not consistent with his own examination findings, including 5/5 strength of the lower extremities, a negative straight leg raising test, no muscle atrophy of the extremities,

---

[108] Tr. 1627-30.
[109] Tr. 1627-28.
[110] Tr. 1618.
[111] Doc. 10 at 20-21.
[112] Tr. 1627-28.

and no difficulty rising from a chair.[113]   These references show substantial evidence supported the ALJ's omission of this limitation.

Philhower also argues that limitations which Dr. Lewin opined necessary were improperly omitted from the RFC.   But the ALJ concluded Dr. Lewin's opinion was not consistent with the record, including evidence of a normal range of motion, 5/5 strength in the lower extremities, and a notation that Philhower returned to full duty work.[114] This is sufficient to explain the omissions.

The remaining points of this argument amount to requests to re-weigh the evidence.[115]   That is not this court's role, and so we do not entertain those portions of this argument.   In sum, Philhower's initial argument is unavailing.

---

[113] Tr. 1630.

[114] Tr. 1633-34.

[115] Philhower argues that certain evidence belies the RFC's accuracy, that certain specific medical records establish impairments not found by the ALJ (and that Philhower's testimony "confirms" those symptoms,) and that the ALJ did not explicitly reference certain portions of the medical record in her decision which "support much more significant limitations [.]"  (Doc. 10 17-19).  In our view, these are all requests to reweigh the evidence.

28

Philhower's second argument is that the ALJ should have found certain impairments to be severe, and the RFC should have contained greater limitations to account for them. At Step 2, the ALJ determines whether a claimant has a medically severe impairment or combination of impairments.[116] An impairment is considered severe if it "significantly limits an individual's physical or mental abilities to do basic work activities," or if it is "something beyond 'a slight abnormality which would have no more than a minimal effect on an individual's ability to work.'"[117] This Step 2 inquiry is a *de minimis* screening device used to cast out meritless claims.[118] The claimant bears the burden to show that an impairment should be considered severe.[119] If some impairments were erroneously labeled non-severe, that error is harmless so long as the evaluation moves to Step 3.[120] Regardless of which impairments are

---

[116] *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (1987).

[117] 20 C.F.R. 404.1520(c); *McCrea v. Comm'r of Soc. Sec.*, 370 F.3d 357, 360 (3d Cir. 2004) (citations omitted).

[118] *McCrea*, 370 F.3d at 360; *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003).

[119] *Bowen*, 482 U.S. at 146; *Stancavage v. Saul*, 469 F. Supp. 3d 311, 331 (M.D. Pa. 2020).

[120] *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007).

found to be severe or non-severe, it is incumbent upon the ALJ to consider all medically determinable impairments when crafting the RFC.[121]

The case of *Hess v. Commissioner of Social Security* is instructive. In *Hess*, the Third Circuit explained that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three."[122]  Additionally, while "steps two and three are important to the ALJ's statement of a claim[,] [they] do not require the use of any particular language."[123]  Rather, the ALJ's findings "need only be 'adequately conveyed' in the ALJ's statement of the limitation, not recited verbatim."[124]  Thus, courts in this circuit have affirmed ALJ decisions that choose not to incorporate additional limitations from nonsevere impairments so long as the ALJ provided a rationale for her decision.[125]

---

[121] 20 C.F.R §§ 416.920(e), 416.945; SSR 96-8p.

[122] *Hess v. Comm'r of Soc. Sec.*, 931 F.3d 198, 209 (3d Cir. 2019).

[123] *Id.*

[124] *Id.*

[125] *See e.g.*, *Jennifer J. v. Bisignano*, 2025 WL 1435628, at *7 (E.D. Pa. May 19, 2025) (finding that "following *Hess*, the ALJ was not required to specifically include limitations associated with Jennifer J's mild impairment . . . when reaching his RFC determination."); *Etze v. Kijakazi*, 2023 WL 3689701, at *6 (E.D. Pa. May 26, 2023) (finding an

Philhower argues that the ALJ failed to find severe—and failed to include limitations addressing—her impairments of migraine headaches, vertigo, COPD, diabetes, depression, and anxiety.[126]  We conclude the ALJ adequately considered these impairments.   The ALJ explicitly explained why migraines and vertigo were not severe.[127]  She discussed why COPD was not severe when discussing respiratory impairments.[128] She then explained that she considered all Philhower's medically determinable impairments, including those that are not severe.[129] Depression and anxiety were considered in the context of both Philhower's reported symptoms[130] and the psychological medical

---

ALJ's discussion of the paragraph "B" criteria sufficient to explain the failure to include mental health limitations in the RFC); *D.C. v. Comm'r of Soc. Sec.*, 2021 WL 1851830, at *6 (D.N.J. May 10, 2021) ("[T]he Commissioner is correct that an RFC assessment does not need to contain an in-depth analysis on mental impairments when the ALJ finds earlier in his opinion that a claimant's mental impairments are no greater than mild.").

[126] Doc. 10 at 23.
[127] Tr. 1619.
[128] Tr. 1620.
[129] Tr. 1620.
[130] Tr. 1628-29.

opinions.[131]   We conclude this is sufficient to show the requisite consideration.

As for diabetes, the ALJ "considered the effects of [Philhower's] impairment of diabetes mellitus [,]"[132] but that is concededly the only mention of diabetes in the decision.   However, diabetes was not mentioned in Philhower's testimony,[133] and her brief in this matter does not identify any portion of the record evincing limitations from diabetes nor make any diabetes-related argument.[134]  At Steps 1 through 4, it is Philhower's burden to prove disability,[135] and on appeal it is her responsibility to show how any alleged error affected the outcome.[136] Philhower has not carried either burden here.  We conclude the ALJ's consideration of non-severe impairments was sufficient.

Lastly, Philhower contends that the ALJ erred in her treatment of Dr. Fink's medical opinions.  A "medical opinion" is a term of art in Social

---

[131] Tr. 1631-32.

[132] Tr. 1622.

[133]  Tr. 42-58, 1508-16.

[134] *See* Doc. 10.

[135] *Mason*, 994 F.2d at 1064

[136] *Holloman v. Comm'r Soc. Sec.*, 639 F. App'x 810, 814 (3d Cir. 2016) (citing *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009)).

Security law, specifically referring to "a statement from a medical source about what you can still do despite your impairment(s) and whether you have one or more impairment-related limitations or restrictions [.]"[137] There is no such statement from Dr. Fink in the administrative record. While Dr. Fink recommended limitations for Philhower in these records, the ALJ found that those limitations were too vague to qualify as medical opinions.[138] These opinions are better classified as medical evidence, and there was no duty of articulation for the ALJ with respect to these records. Further, to the extent these medical records can be considered "medical opinions," the ALJ adequately discussed them, as she considered the supportability and consistency of Dr. Fink's opinions and explained why she concluded those factors were lacking.[139] No more is required.

---

[137] 20 C.F.R. § 404.1513.

[138] For example, while Dr. Fink's February 2023 assessment states that he has "given [Philhower] restrictions limiting overhead and weightbearing activity for work [,]" he did not state how often she can lift overhead, or how much weight she can bear with what frequency. Those details are the sort required to create a medical opinion in the context of Social Security, and they are simply not present in Dr. Fink's records.

[139] Tr. 1632-33.

33

Given that the ALJ considered all the evidence and adequately explained the decision for including or discounting certain limitations as established by the evidence, we find no error with the decision. Therefore, under the deferential standard of review that applies to appeals of Social Security disability determinations, we conclude that substantial evidence supported the ALJ's evaluation of this case, and this decision will be affirmed.

## IV. Conclusion

For the foregoing reasons, the decision of the Commissioner in this case will be affirmed, and the plaintiff's appeal denied.

An appropriate order follows.

*s/ Daryl F. Bloom*
Daryl F. Bloom
Chief United States Magistrate Judge

Dated: April 21, 2026

34